**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Damien Peterson,                                    :          Case No. 1:09 CV 01012

          Petitioner,                           :

v.                                                          :          **MAGISTRATE'S REPORT
                                                                    AND RECOMMENDATION**

Keith Smith,                                         :

          Respondent.                       :

      This case, filed pursuant to 28 U.S.C. § 2254, was automatically referred to the undersigned Magistrate pursuant to Local Rule 72.2(b)(2).  Pending is Petitioner's Petition for Writ or Habeas Corpus to which Respondent filed a Return and Petitioner filed a Traverse  (Docket Nos. 1. 15 & 33).  For the reasons that follow, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

**I.  FACTUAL BACKGROUND**

      Because Petitioner's habeas petition was filed in May 2009, it is subject to the standards set forth in the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Under AEDPA, the state court's factual findings are presumed correct and may be disturbed only upon a petitioner's showing by clear and convincing evidence that the factual findings were incorrect.  *Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009)

(*citing White v. Mitchell*, 431 F. 3d 517, 523-524 (6th Cir. 2005).  A recapitulation of the facts found by the court of appeals follows.

Matthew Donohue, the general manager of Flo's, a restaurant/bar located near the Brown's stadium in Cleveland, Ohio, testified that the restaurant was very busy on August 13 and August 14, 2005.  On August 14, 2005, Donohue left the restaurant a few minutes before 6:00 a.m.  As was his usual custom, Donohue had the receipts in a messenger bag strapped across his right shoulder.  As he crossed Lakeside Avenue, under the Shoreway Bridge, a man "popped up with a gun" and demanded the bag.  While pointing the gun at eye level, Donohue admonished the man and the man responded "don't make me kill you for the fucking bag."

Donohue testified that the man then reached for the bag, grabbed its strap and hit him in the head with the gun.  During the tussle, Donohue stumbled, the strap of the bag slid off his shoulder and the man was able to grab the bag from him.  Donohue got up from the ground and the man fired a shot at him.  The bullet whisked past Donohue's ribcage.  Consumed with anger about losing the money after working for 14 hours, Donohue reacted and commenced chasing the man.  In turn, the man fired one more shot.  Donohue screamed for help and called 9-1-1 from his cell phone.  In fact, Donohue was on the cell phone while the chase ensued.  He ran up to a car where the man was seated in the driver's seat and banged on its window before the man drove away.  Donohue was able to give the 9-1-1 operator a description of the car, the direction in which it was traveling and the license plate number.

The police arrived and Donohue took them to the place where the man had fired the shots.  The police retrieved two shell casings.  Donohue was unable to identify Petitioner in two different photo arrays.  However, Donohue conclusively identified Petitioner in a line up and he definitively identified Petitioner when he was asked to speak the words that were spoken to him during the incident.

The police determined that the owner of the car which the perpetrator used during the incident

belonged to an individual by the name of Odell Merriweather, an elderly nursing home resident.  His

daughter and son had access to the car.  Ms. Merriweather, a convicted felon, told police that Petitioner

and Kenny McSwail also had access to the car when they repaired it.  However, she was generally with

them when they repaired the car.  Kenny McSwail did not match the description of the perpetrator.  With

Ms. Merriweather's permission, the investigating detective searched the car.

Ms. Merriweather was shown two photo lineups.  In one line-up, she identified her brother Odell

Jr., and in the other one she identified a former boyfriend, Douglas Littlejohn.  She identified Petitioner

from a Bureau of Motor Vehicles photo.  The investigating detective also interviewed Odell Jr.  After

interviews with Ms. Merriweather and Odell Jr., the detective contacted Shawn Riddle, a parole officer.

Petitioner was arrested at the Adult Parole Authority.

*State v. Peterson*, 2007 WL 1153434, *1 -2 (2007) (unreported).

## II.  PROCEDURAL BACKGROUND.

### A.  INDICTMENT AND CONVICTION.

During September 2005, the Cuyahoga County, Ohio, grand jury issued a three-count indictment

with specifications:

> **COUNT 1**:  On August 14, 2005, Petitioner did attempt or commit a theft offense as defined
> in OHIO REV. CODE § 2913.01, or in fleeing immediately after the attempt or
> offense upon Donohue, have a deadly weapon, which he either displayed,
> brandished or possessed or used.
>
> **Firearm Specifications:**
> > (1)  Grand jurors further found and specified that Petitioner had a firearm
> > on or about his person and under his control while committing the
> > offense (1 year)
> >
> > **(2)**  Grand jurors further found and specified that Petitioner had a firearm
> > on or about his person and under his control while committing the
> > offense and displayed the firearm, brandished the firearm, indicated
> > that he possessed the firearm or used it to facilitate the offense (3
> > years).
>
> **Repeat Violent Offender (RVO) Specification**:
> > Petitioner was convicted of or plead guilty to and served time for committing a

3

felony of the first or second degree or any substantially equivalent offense.

COUNT 2:    On August 14, 2005, Petitioner unlawfully and knowingly did cause or attempt to cause physical harm by means of a deadly weapon, a violation of OHIO REV. CODE § 2923.11.

**Two Firearm Specifications**
**Notice of Prior Conviction**
**RVO Specification**

COUNT 3:    The grand jurors found Petitioner unlawfully and knowingly acquired, had, carried or used a firearm while being under indictment or having been convicted of a felony of violence, a violation under OHIO REV. CODE § 2923.13.

(Docket No. 15, Exhibit 2, pp. 1-3 of 133).

On April 27, 2006, a jury found Petitioner guilty of all three counts with the accompanying gun and notice of prior conviction specifications as charged in the indictment (Docket No. 15, Exhibit 2, p. 25 of 133).  On May 3, 2006, Judge Ralph A. McAllister entered judgment in which Petitioner was sentenced to a total of fifteen years.  For purposes of sentencing, the firearm specifications in counts one and two were merged; Petitioner was sentenced to three years on the firearms specification and three years on the RVO specification to run prior to and consecutively to nine years on base charges in count one (aggravated robbery), five years on count two (felonious assault) and four years on count three (carrying a weapon under disability), all counts to run concurrently with each other (Docket No. 15, Exhibit 2, p. 26 of 133).

B.    DIRECT APPEAL.

Petitioner filed a notice of appeal on June 1, 2006 (Docket No. 15, Exhibit 2, p. 27 of 133).

Petitioner asserted three assignments of error:

(1)    The jury's verdict convicting Petitioner of aggravated robbery and felonious assault was against the sufficiency of the evidence.

(2)    The jury's verdict convicting Petitioner of aggravated robbery and felonious assault was against the manifest weight of the evidence.

(3)    There was prosecutorial misconduct in eliciting statements from a witness regarding Petitioner's parole status.

(4)    Petitioner was denied the effective assistance of counsel.

4

(Docket No. 15, Exhibit 2, p. 44 of 133).

On April 30, 2007, the Court of Appeals for the Eight Appellate District, County of Cuyahoga, journalized an order that affirmed, in part, the judgment of conviction but modified the sentence and remanded the case to the trial court of correction of sentencing entry (Docket No. 15, Exhibit 2, p. 102 of 133).  Because the trial court improperly sentenced on the RVO specifications, Petitioner's sentence was modified to twelve years (Docket No. 15, Exhibit 15, pp. 102-119 of 133).

**C.**    **APPEAL TO THE OHIO SUPREME COURT**

On June 11, 2007, Petitioner perfected a notice of appeal in the Ohio Supreme Court (Docket No. 15, Exhibit 2, p. 132 of 133).  In the memorandum in support of jurisdiction, Petitioner argued:

(1)    The evidence in the case was insufficient as a matter of law to support a conviction of aggravated robbery and felonious assault.
(2)    The verdict in the case was against the manifest weight of the evidence.
(3)    Petitioner was prejudiced by prosecutorial misconduct in eliciting statements from a witness regarding Petitioner's parole status.
(4)    The inadequate representation that Petitioner received fell below that objective reasonable standard, thus violating the Sixth Amendment.

(Docket No. 15, Exhibit 3, pp. 2 of 142).

On September 28, 2007, Chief Justice Thomas J. Moyer denied Petitioner leave to appeal and dismissed the appeal as it did not involve any substantial constitutional question (Docket No. 15, Exhibit 3, p. 38 of 142).

**D.**    **REQUESTS FOR POST CONVICTION RELIEF.**

**(1) Petition to Vacate and Set aside Sentence**.  During the pendency of his direct appeal, Petitioner filed a petition to vacate and set aside the sentence on February 23, 2007 (Docket No. 15, Exhibit 3, p. 63 of 142).  He supplemented the record on March 5, 2007 (Docket No. 15, Exhibit 3, p. 129 of 142).  The petition was denied on February 27, 2007 (Docket No. 15, Exhibit 3, p. 133 of 142).  Petitioner filed a notice of appeal on August 8, 2007 (Docket No. 15, Exhibit 4, p. 29 of 161).  He

presented one assignment of error:

The trial court erred when it dismissed the petition as insufficient (Docket No. 15, Exhibit 4, p. 34 of 161).

Petitioner supplemented the brief with an additional claim:

The Supreme Court held in *State v. Colon*, 118 Ohio St. 3d 26 (2008), that when an indictment fails to charge the *mens rea* element of a crime, that omission constitutes a structural error.  Petitioner's indictment did not expressly state the *mens rea* element of recklessness regarding the one count of aggravated robbery.  Under principles established in *Colon*, Petitioner's indictment was unconstitutional.

(Docket No. 15, Exhibit 4, p. 98-106 of 161).

On September 2, 2008, the Court of Appeals journalized an entry affirming the trial court's judgment that the indictment was sufficient.  Accordingly, it affirmed the trial court's decision (Docket No. 15, Exhibit 4, p. 116 of 161).  Petitioner filed a notice of appeal in the Ohio Supreme Court (Docket No. 15, Exhibit 4, p. 117 of 161).  In the memorandum in support of jurisdiction, Petitioner asserted four propositions of law.

> (1)  A void judgment can be attacked in post-conviction relief proceedings even if the matter could have but was not raised on appeal.  If the Petitioner's judgment is void, the doctrine of *res judicata is* inapplicable.
> (2)  The two judicially interpreted *mens rea* elements of robbery are essential elements which must be charged in the indictment, proven beyond a reasonable doubt and found by a properly instructed jury.
> (3)  An indictment which fails to include an essential element is fatally defective, is void for lack of subject matter jurisdiction or failure to charge an offense, and may be challenged for the first time on appeal.
> (4)  Petitioner was deprived of the effective assistance of counsel when his attorney failed to challenge the indictment and/or object to the jury instructions which omit essential elements of the offense.

(Docket No. 15, Exhibit 4, p. 120 of 161).

Chief Justice Moyer denied Petitioner's request for leave to appeal and dismissed the appeal as not having any substantial constitutional question (Docket No. 15, Exhibit 4, p. 140 of 161).

**(2) Findings of Fact and Conclusions of Law**.  Petitioner requested findings of fact and

6

conclusions of law on June 28, 2007 (Docket No. 15, Exhibit 3, p. 134 of 142).  The trial court granted the motion and filed findings of fact and conclusions of law on July 12, 2007 (Docket No. 15, Exhibit 3, pp. 136 -141 of 142).

**(3) Application to Reopen**.  During the pendency of the appeal to the Ohio Supreme Court, Petitioner filed an application to reopen the direct appeal on July 30, 2007 in the Court of Appeals (Docket No. 15, Exhibit 3, p. 39 of 142).  Petitioner presented two reasons for reopening his case:

(1)     He did not have the benefit of effective assistance of counsel.
(2)     The evidence was insufficient as a matter of law.

The Court of Appeals denied the application on October 23, 2007 (Docket No. 15, Exhibit 3, p. 56 of 142).

**(4) Motion to Dismiss**.  Petitioner filed a motion to dismiss for want of jurisdiction on December 22, 2008 (Docket No. 15, Exhibit 4, p. 141 of 161).  The motion was deemed moot on January 9, 2009 (Docket No. 15, Exhibit 4, p. 158 of 161).

**E.      WRIT OF HABEAS CORPUS**.

In May 2009, Petitioner filed a Petition Under 28 U. S. C. § 2254 for Writ of Habeas Corpus (Docket No. 1).  He amended the Petition (Docket No. 9).  In the Amended Petition, Petitioner asserted five grounds for habeas relief.

.     (1).     Petitioner's convictions were based on insufficient evidence.
(2).     The prosecutor in Petitioner's case engaged in misconduct.
(3).     Trial and appellate counsel were ineffective.
(4).     The indictment was defective.
(5)      Abuse of discretion.

### III. JURISDICTION

A federal court has jurisdiction to entertain a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation

of the Constitution or laws or treaties of the United States." *Sanborn v. Parker,* 629 F.3d 554, 564 (6th Cir. 2010) (*citing* 28 U.S.C. § 2254(a)).  The custody requirement of a habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty.  *Leslie v. Randle*, 296 F. 3d 518, 521 (6th Cir. 2002).  The Supreme Court has interpreted the statutory language as requiring that the habeas petitioner be in custody under the conviction or sentence under attack at the time his or her petition is filed.  *Id.* at 521-522 (*citing Maleng v. Cook*, 109 S. Ct. 1923, 1924-1925 (1989)).        In the instant case, Petitioner is in custody of the Mansfield Correctional Institute in Mansfield, Ohio.  The restraint on his liberty is a collateral consequence of his conviction sufficient to satisfy the "in custody" prerequisite to habeas corpus review.  He is seeking relief from his conviction under the Fourth and Fourteenth Amendments to the United States Constitution.  The Magistrate finds Petitioner has met the prerequisites and that this Court has jurisdiction to address the merits of Petitioner's Writ of Habeas Corpus.

### IV.  HABEAS CORPUS STANDARD OF REVIEW.

Under AEDPA, a federal court may not grant a writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits unless (1) the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," *Thompson v. Bell,* 580 F.3d 423, 433(6th Cir. 2009) (*citing* 28 U.S.C. § 2254(d)(1), or (2) the state court's decision "was based on an unreasonable application of the facts in light of the evidence presented in the State court proceedings." *Id.* at 433-434 (*citing* 28 U. S. C. § 2254(d)(2)).  A state court's decision is "contrary to" clearly established federal law under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* (*citing Williams v. Taylor,* 120 S. Ct. 1495, 1523 (2000)).  An "unreasonable application" occurs

8

when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state court decision unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* (*citing Williams*, 120 S. Ct. at 1522). Rather, the state court decision must be an "objectively unreasonable" application of federal law to be reversed. *Id.* (*citing Williams*, 120 S. Ct. at 1521).

## V. PROCEDURAL ANALYSIS OF PETITIONER'S HABEAS PETITION.

Two types of procedural failures may preclude federal review of claims in a habeas corpus petition. *Smith v. Hudson*, 2009 WL 3052354, *5 (N. D. Ohio 2009). The first type occurs when a petitioner fails to raise a claim in state court and pursue that claim through the state's "ordinary appellate review procedures." *Id.* (*citing O'Sullivan v. Boerckel*, 119 S. Ct. 1728, 1734 (1999). If state law no longer allows the petitioner to raise the claim at the time the federal habeas petition is filed, then the claim is procedurally defaulted. *Id.* (*citing Engle v. Isaac,* 102 S. Ct. 1558, 1570 n. 28 (1982)*; see also Coleman v. Thompson*, 111 S. Ct. 2546, 2554 (1991)). The exhaustion requirement only refers to remedies still available at the time of the federal petition. *Id.* (*citing Engle,* 102 S. Ct. at 1570 n. 28).

Procedural default occurs when a petitioner fails to present his constitutional claims fairly to the highest state court in a federal constitutional context. *Id.* (*citing Anderson v. Harless*, 103 S. Ct. 276 (1982)*; Picard v. Connor*, 92 S. Ct. 509 (1971)). Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law  . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Id.* (*citing Wainwright v. Sykes,* 97 S. Ct. 2497, 2506 (1977). When a petitioner has defaulted his federal claims in

9

state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice.  *Id.* (*citing Coleman v. Thompson,* 111 S. Ct. 2546, 2564-2565 (1991)).

For non-compliance with a state procedural rule to serve as a bar to habeas review, the state procedure must satisfy the standards set forth in *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). *Murphy v. Smith,* 551 F. 3d 485, 501 (6th Cir. 2009) *cert. denied* 130 S. Ct. 397 (2009) (*see Smith v. Ohio Department of Rehabilitation & Corrections*, 463 F.3d 426, 431 (6th Cir. 2006)).  First, there must be a state procedural rule in place that the petitioner failed to follow.  *Id*. (*citing Maupin,* 785 F.2d at 138). Second, the state court must have actually denied consideration of the petitioner's claim on the ground of the state procedural default.  *Id.* at 501-502.  Third, the state procedural rule must be an "adequate and independent state ground to preclude habeas review."  *Id.*

If these three factors are satisfied, the petitioner can overcome the procedural default by either demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice.  *Id.* (*citing Coleman v. Thompson,* 111 S. Ct. 2546, 2555 (1991)).  The existence of "cause" for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule.  *Cvijetinovic v. Eberlin,* 617 F.3d 833, 837 (6th Cir. 2010) (*citing Murray v. Carrier,* 106 S. Ct. 2639 2645 (1986); *see also Shorter v. Ohio Department of Rehabilitation & Corrections,* 180 F.3d 723, 726 (6th Cir. 1999) (noting that petitioner had failed to demonstrate cause because his [c]ounsel's efforts to comply with the state's procedural rule were

10

not impeded by some objective factor external to the defense"). "Such factors may include 'interference by officials,' attorney error rising to the level of ineffective assistance of counsel, and 'a showing that the factual or legal basis for a claim was not reasonably available.' " *Id.* (*citing Hargrave-Thomas v. Yukins,* 374 F.3d 383, 388 (6th Cir. 2004) (*quoting McCleskey v. Zant,* 111 S. Ct. 1454, 1469-1470 (1991)). Prejudice that must be shown must be the result of the alleged constitutional violation and not a result of the counsel's failure to meet the state procedural guidelines. *Maupin, supra*, 785 F. 2d at 139 (*citing United States v. Frady*, 102 S. Ct. 1584, 1594 (1982)).

**A.** **CLAIM ONE:** **INSUFFICIENT EVIDENCE.**

Petitioner has overcome the procedural bar to habeas review by presenting his claims of insufficient evidence first on direct appeal and then on appeal to the Ohio Supreme Court.  The merits of the claim that his conviction was based on insufficient evidence are subject to substantive review.  The merits of Petitioner's claim are addressed in Section VI of this Report and Recommendation.

**B.** **CLAIM TWO:** **PROSECUTORIAL MISCONDUCT**.

Expounding on the general allegation that the prosecutor engaged in misconduct, Petitioner's second claim consists of two prongs.  First, the prosecutor impermissibly elicited testimony of his prior convictions previously excluded by the trial court.  Second, the prosecutor withheld evidence that Donohue could not make an identification from the photographic array.

The first claim was presented to the appellate court on direct appeal and then to the Ohio Supreme Court.  Accordingly, the Magistrate conducts habeas review of the merits of Petitioner's claim in Section VI of this Report and Recommendation.

The second claim is waived as it was never presented on direct appeal, or to the Ohio Supreme

Court.  Ohio law provides that an appellant must raise his or her claims on appeal at the first opportunity to do so.  *Smith v. Hudson,* 2009 WL 3052354, *7 (N. D. Ohio 2009) (*see Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001); *see also State v. Broom*, 40 Ohio St.3d 277, 288-89, 533 N.E.2d 682 (1988) (noting that in Ohio, the failure to present a claim to either the state court of appeals or to the Supreme Court of Ohio constitutes a waiver of the claim).  A procedural bar arises when the petitioner fails to raise a claim in state court and pursue that claim through the state's ordinary appellate review procedures.  *Id.* (*citing O'Sullivan v. Boerckel*, 119 S. Ct. 1728, 1734 (1999)).

The Magistrate finds that Petitioner waived the claim that the prosecutor erred by withholding evidence since he failed to comply with the procedural pre-requisites to obtaining habeas review.  This claim is not subject to habeas review.

## C.    CLAIM THREE:        INEFFECTIVE ASSISTANCE OF COUNSEL.

Petitioner contends in the direct appeal to the Ohio Supreme Court and application to reopen that trial counsel was ineffective for failing to locate witnesses who advised of possible suspects and/or pursue a line of questioning regarding possible suspects with the officers who testified at trial.

In his Petition for Writ of Habeas Corpus, Petitioner asserts claims against his trial and appellate and trial counsel.  Petitioner failed, however, to present a claim for ineffective assistance of appellate counsel in the direct appeal, appeal to the Ohio Supreme Court or motions for post-conviction relief.  Such failure constitutes a wavier of the claim for ineffective assistance of appellate counsel.  The Magistrate addresses the merits of Petitioner's claim that trial counsel was ineffective in Section VI of this Report and Recommendation.

## D.    CLAIM FOUR:        DEFECTIVE INDICTMENT.

In a motion for post-conviction relief, Petitioner asserted that the indictment failed to establish jurisdiction or charge a criminal offense for which Petitioner was convicted.  He presented this claim to the Ohio Supreme Court.  The merit of this claim is resolved in Section VI of this Report and Recommendation.

**E.    CLAIM FIVE:          ABUSE OF DISCRETION.**

Petitioner alleges that the trial judge abused his discretion and violated his right to a fair trial when he refused to admit a newspaper clipping signed by the Cleveland Public Librarian that reported the time the sun rose on August 14, 2005.  Petitioner failed, however, to present this claim on appeal or in any of the motions requesting post-conviction relief.  Such failure to present a claim to either the state court of appeals or to the Supreme Court of Ohio constitutes a waiver of the claim.  Accordingly, the merits of this claim are not subject to consideration in habeas relief.

**VI. SUBSTANTIVE ANALYSIS OF PETITIONER'S CLAIMS THAT WERE NOT SUBJECT TO WAIVER.**

Here, the Magistrate conducts substantive review of those claims that were neither waived nor procedurally defaulted.  The claims are:

(1)    the evidence was insufficient to result in a conviction;
(2)    the prosecutor impermissibly elicited testimony of his prior convictions previously excluded by the trial court;
(3)    trial counsel was ineffective; and
(4)    the indictment was defective.

**A.    CLAIM ONE:  INSUFFICIENT EVIDENCE**

Petitioner contends that the evidence was insufficient to convict him of aggravated robbery and felonious assault.  Specifically, no rational trier of fact could have convicted him if they heard that Donohue and Ms. Merriweather were co-workers; that Donohue was uncertain of the amount of money

13

he had on his person when robbed and that the spent shell casing from a nine millimeter weapon retrieved at the scene of the shooting were not consistent with Donohue's claim that he was shot with a .25 caliber weapon.

A conviction is supported by sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sanborn v. Parker* 629 F.3d 554, 577 (6th Cir. 2010) (*citing Jackson v. Virginia,* 99 S. Ct. 2781, 2788-2789 (1979)). The court conducting habeas review must also review the claim of whether a claim is supported by sufficient evidence through the lens of AEDPA; thus the question that faces the court is ultimately whether it was objectively unreasonable for the state court to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that a defendant committed the essential elements of the crime charged beyond a reasonable doubt. *Id.* (*citing Pinchon v. Myers,* 615 F.3d, 631, 643 (6th Cir. 2010) (*quoting Nash v. Eberlin,* 258 Fed.Appx. 761, 765 (6th Cir. 2007) (first, second, and fourth alterations in *Pinchon*)).

In the instant case, consideration need not be given to the evidence that Petitioner suggests would have exonerated him. Instead, the Magistrate conducted an independent review of the evidence in the record that showed the coexistence of essential elements of aggravated robbery and felonious assault. Based upon the record review, no physical evidence connected Petitioner to the crimes. Officer Mark Peoples responded to the 9-1-1 call and approximately twenty minutes later arrived on the scene. He retrieved spent shell casings from the location where Donohue was robbed. Officer Paul Scott was given the file and completed further investigation. Neither Officers Peoples nor Scott submitted the shell casings or the possible DNA sample from Donohue's contact with the robber for forensic tests (Docket No. 16, Exhibit 6, pp. 66 of 115; 92-93 of 115). However, Donohue was able to connect Petitioner to

14

the crime by voice and physical identification.  He claimed that he grabbed Petitioner's arm and grabbed at the gun.  Petitioner shot at him and he was also able to identify by its license, the car parked on Summit that the robber used to leave the scene (Docket No. 15, Exhibit 6, pp. 23-26 of 115, 28 of 115, 30 of 115, 32 of 115).

Officer Scott investigated the license plate number for the "getaway vehicle" supplied by Donohue (Docket No. 15, Exhibit 6, p. 76 of 115).  The getaway vehicle was owned by Ms. Merriweather's father (Docket No. 15, Exhibit 6, p. 77 of 115).  Once Officer Scott eliminated Ms. Merriweather's father and brother as possible suspects, he resorted to computer generated research as well as Ms. Merriweather's identification of Petitioner as her former boyfriend and his access to her father's car (Docket No. 15, Exhibit 6, pp. 52 of 115, 78-81 of 115; pp. 96-97 of 115).

The testimony weighed heavily in favor of a conviction.  A rational trier of fact could conclude from this evidence that Petitioner committed essential elements of both crimes beyond a reasonable doubt.  Petitioner is not entitled to habeas relief on his claim of insufficient evidence.

**B.      CLAIM TWO:  PROSECUTORIAL MISCONDUCT.**

Petitioner's second claim raises an instance of alleged prosecutorial misconduct where the prosecutor impermissibly elicited testimony of his prior convictions previously excluded by the trial court.  The reference to his parole status, Petitioner contends, rendered his trial fundamentally unfair.

The prosecutor's duty in a criminal trial is twofold.  *Dorsey v. Banks,* 2010 WL 3825380, *38 (S. D. Ohio 2010).  The prosecutor is to present the case for the state as its advocate and the prosecutor is responsible to ensure that an accused receives a fair trial.  *Id.* (*citing Berger v. United* States, 55 S. Ct. 629 (1935); *State v. Staten*, 14 Ohio App.3d 197,  [78, 470 N.E.2d 249] (1984)).  Misconduct of a prosecutor at trial will not be considered grounds for reversal unless the conduct deprives the defendant

15

of a fair trial.  *Id.* (*citing State v. Apanovitch*, 33 Ohio St.3d 19, 514 N.E.2d 394 (1987); *State v. Maurer*, 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768 (1984)).  The touchstone of analysis is "the fairness of the trial, not the culpability of the prosecutor."  *Id.* (*citing State v. Underwood*, 73 Ohio App.3d 834, 840-841, 598 N.E.2d 822, 826 (1991),(*citing Smith v. Phillips,* 102 S.Ct. 940, 947 (1982)).

In order to prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the statements of the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Abela v. Martin,* 380 F.3d 915, 929 (6th Cir. 2004) (*citing Donnelly v. DeChristoforo,* 94 S.Ct. 1868, 1871 (1974)).  In determining whether a petitioner's due process rights were violated, the Sixth Circuit Court will consider the totality of the circumstances, including the degree to which the remarks complained of have a tendency to mislead the jury and prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.  *Id.* (*citing Kincade v. Sparkman*, 175 F.3d 444, 446 (6th Cir. 1999)).

Prior to trial in this case, defense counsel filed a motion in limine to exclude evidence of Petitioner's parole/post release control status and prior conviction for aggravated robbery/felonious assault (Dock No. 15, Exhibit 2, p. 18 of 133).  The trial court ruled that matters relating to Petitioner's prior record were inadmissible and that his parole status could only be  introduced "if it was a factor in his arrest and charge in this case then the state [may] introduce it, if it's a factor."  *State v. Peterson,* 2007 WL 1153434 ¶ 34.

The prosecutor's inquiry proceeded as follows:

Q.    Okay.  You contacted who?
A.    Shawn Riddle.
Q.    Okay.  Why is that

16

Defense counsel:      Objection.

The court:          Overruled.

A.     Well, he's a parole officer.

Q.     Okay. And, what happened next?

A.     Damien Peterson was arrested as a result of that conversation.

Q.     Okay.  So what did you do?

A.     I was notified the day of the arrest.  I responded with a partner to the APA, Adult Parole Authority.  And, I picked up Damien Peterson and took him to jail.

(Docket No. 15, Exhibit 6, pp. 81-82 of 115).

Consistent with the trial court's ruling, the prosecutor did not exceed the limitations of the court's order by inquiring into Petitioner's prior criminal record.  The prosecutor neither elicited inadmissible testimony that would reveal Petitioner's parole status nor identified Shawn Riddle as Petitioner's parole officer but only as a parole officer.  In the context of the circumstances surrounding Petitioner's arrest, including the degree to which Officer Scott's answers had a tendency to mislead the jury and prejudice Petitioner, the Magistrate is not persuaded that the alleged answers deprived Petitioner of a fair trial.  Simply, the prosecutor's proper questions called for answers that were admissible due to relevance.  Any adverse effect of the questions did not rise to the level of misconduct in violation of the Due Process Clause.

**C.**    **CLAIM THREE:**    **INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

Petitioner contends in the direct appeal to the Ohio Supreme Court and application to reopen that trial counsel was ineffective for failing to investigate possible witnesses Paul Tate and Antonine Sealy

17

and then pursuing a line of questioning to the police officers regarding statements made by Antonine that were overheard by Paul Tate.

To establish that counsel afforded ineffective assistance, a petitioner must show that his attorney's performance was deficient, falling below an objective standard of reasonableness, and that such deficiency prejudiced his defense. *Mason v. Mitchell*, 320 F.3d 604, 616 (6ᵗʰ Cir. 2003) (*citing Strickland v. Washington*, 104 S. Ct. 2052, 2067 (1984)).  The objective standard of reasonableness is a highly deferential one and includes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 616-617 (*citing Strickland*, 104 S. Ct. at 2065; *United States v. Pierce*, 62 F.3d 818, 833 (6ᵗʰ Cir. 1995) (placing the burden on the defendant to demonstrate a constitutional violation), *cert. denied*, 116 S. Ct. 965 (1996)).

To satisfy the prejudice requirement, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* (*citing Williams v.Taylor*, 120 S. Ct. 1495, 1511-1512 (2000) (*quoting Strickland*, 104 S. Ct. at 2068).  "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  *Id.* (*citing Kimmelman v. Morrison*, 106 S. Ct. 2574, 2582 (1986)).

It is well established that counsel has a duty to make a reasonable decision that makes particular investigations unnecessary.  *Dempsey v. Bobby*, 412 F. Supp.2d 720, 730 (N. D. Ohio 2005) (*citing Towns v. Smith*, 395 F.3d 251, 258 (6ᵗʰ Cir.2005) (*quoting Strickland*, 104 S. Ct. at 2066)).  This duty encompasses "the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence."  *Id.*  Although "a particular decision to investigate must be directly

18

assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments," *Id.* (*citing Strickland,*,104 S. Ct. at 2066), courts "have not hesitated to find ineffective assistance in violation of the Sixth Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices his/her client." *Id.* (*citing Towns,* 395 F.3d at 258 (collecting cases)).

Taking into consideration  the presumption of counsel's competence, the Magistrate finds that the evidence in the instant case does not support a finding that trial counsel's performance was outside the wide range of professional competent assistance.  Apparently trial counsel had conducted an investigation that lead to the discovery of possible exculpatory evidence possessed by Paul Tate and Antonine Sealy.  It was suspected that Paul Tate would testify that he overheard Antonine Sealy admit that he was involved in the robbery.  Trial counsel filed a motion to compel their attendance at the commencement of trial as efforts to locate these witnesses were unsuccessful (Docket No. 15, Exhibit 3, pp. 5 of 136, 33-36 of 136).  Applying a heavy measure to trial counsel's exercise of discretion in this circumstance, the Magistrate cannot second guess a strategic decision that did not prove successful.

When considering whether Petitioner was materially prejudiced by the alleged error of trial counsel, the Magistrate finds that Petitioner failed to demonstrate with reasonable probability that but for trial counsel's failure to compel the attendance of Paul Tate and Antonine Sealy at his trial, he would have been acquitted particularly since Petitioner claims that Antonine Sealy's alleged comments were self incriminating.  Petitioner does not propose that Antonine Sealy's comments would overcome the evidence of Petitioner's guilt.  Taking into account the relative strength of the case proffered by prosecutor, it is unlikely that the testimony of Paul Tate and/or Antonine Sealy would have cast reasonable doubt respecting Petitioner's guilt.  The confidence of the outcome has not been undermined

by trial counsel's inability to investigate potential witnesses and pursue a line of questioning.

**D.    DEFECTIVE INDICTMENT.**

Petitioner claims that his indictment was defective as it failed to include the *mens rea* elements of robbery.  This omission deprived the trial court of jurisdiction.

A claim that a criminal complaint or indictment is defective cannot be raised by way of a petition for state habeas corpus relief in Ohio.  *Baldwin v. Beightler,* 2009 WL 2705922, *10 (N. D. Ohio 2009). "Like other extraordinary-writ actions, habeas corpus is not available when there is an adequate remedy in the ordinary course of law." *Id.* (*citing McAllister v. Smith,* 119 Ohio St.3d 163, 164, 892 N.E.2d 914, 915 (2008) (*quoting In re Complaint for Writ of Habeas Corpus for Goeller,* 103 Ohio St.3d 427, 816 N.E.2d 594 (2004)).  "An extraordinary writ cannot challenge the validity or sufficiency of a charging instrument, and [a defendant] has an adequate remedy in the ordinary course of law by appeal to raise his claim that the criminal complaint was defective." *Id.* (*citing Monroe v. Jackson,* 119 Ohio St.3d 344, 344, 894 N.E.2d 43, 44 (2008); *see also Orr v. Mack*, 83 Ohio St.3d 429, 430, 700 N.E.2d 590, 591 (1998*)* ("[H]abeas corpus is not available to attack the validity or sufficiency of the charging instrument.")).

The Magistrate finds that the sufficiency of the indictment cannot be reviewed in this habeas proceeding.

### VII. CONCLUSION

In view of the foregoing, the Magistrate Judge recommends that the Court deny the Petition for Writ of Habeas Corpus and terminate the referral to the undersigned Magistrate Judge.

<u>/s/Vernelis K. Armstrong</u>
United States Magistrate Judge


Date:  April 20, 2011


### VIII.  NOTICE

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.